STATE OF MISSOURI, RESPONDENT, v. W. C. SCHAEFFER, APPELLANT.*

Kansas City Court of Appeals. June 15, 1925.

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 934, n. 44; p. 1075, n. 14; 17CJ, p. 161, n. 63; p. 186, n. 24; Intoxicating Liquors, 33CJ, p. 758, n. 80.

No briefs filed.

ARNOLD, J.—This is an appeal by defendant W. C. Schaeffer from a verdict of guilty in the criminal court of Jackson county, Missouri.

The indictment was ·in three counts, the first charging that defendant on "the 25 day of July, 1923," at the county of Jackson, and State of Missouri, did then and there unlawfully and feloniously use and possess a still, doubler, worm, worm tub, mash tub and fermenting tub . . . used and fit for use in the manufacture and production for sale of a certain quantity of intoxicating liquors, to-wit, thirty-eight barrels of mash and twenty-eight gallons of "corn whiskey" "hootch" and "moonshine," etc.

In the second count defendant is charged as of same date, with unlawfully and feloniously making, manufacturing, brewing and distilling a certain quantity of intoxicating liquors, to-wit, thirty-eight barrels of mash and twenty-eight gallons of "hootch," "moonshine" and "corn whiskey," etc.

The third count charges that Joseph Forte and W. C. Schaeffer, on July 25, 1925, in the county of Jackson and State of Missouri, "did then and there unlawfully have in their possession a certain quantity of intoxicating liquors, to-wit, thirty-eight barrels of mash and twenty-eight gallons of· "hootch" "moonshine" and "corn whiskey," etc.

The case was tried in Division 7, then holding as the Criminal Division "C" of the circuit court of Jackson county. The record discloses that the jury, after hearing all the evidence, returned the following verdict: "We, the jury, find the defendant W. C. Schaeffer guilty of manufacturing, making, brewing and distilling intoxicating liquor on second count of the indictment and assess his punishment at three months in the county jail and pay a fine of five hundred dollars."

Motions for new trial and in arrest were ineffectual and defendant appeals. Judgment was entered in accordance with the verdict.

No briefs were filed by counsel and we have before us only the transcript of the record and the bill of exceptions. Under the provisions of the statute (sec. 4106, R. S. 1919), we are required to examine the whole record for errors, and this we have done. [State v. Lipps, 267 S. W. 414; State v. Wright, 236 S. W. 395; State v. Barton (Mo.), 209 S. W. 888.] We find that at the close of the State's case, and at the close of the entire case, defendant offered instructions in the nature of a demurrer to the evidence, which were overruled and these rulings, among other things, are assigned as error in the motion for a new trial.

The facts show that the marshal of Jackson county, through his regularly appointed deputies, under a search warrant, made a search of defendant's premises located at 124th and Holmes streets, in said county. The said premises consist of twenty acres of land and a number of buildings, fitted and used in breeding, hatching and selling chickens, and is known as the "Heart of America Poultry Farm." Defendant's residence is on the property. About 250 to 300 feet north of the residence is a house known as a breeder and incubator house. It is two stories in height and one of the employees of defendant lives with his family in the upper story. The breeder house is described as being about sixty to sixty-five feet in length and twenty feet wide. Along the south side of the first story and about ten feet from the south wall is a wallboard partition, about as high as a man's head, and also from a point about ten feet from the west wall this partition continues at the same height, across the west end of the room, and joins the north wall. With the exception of the rooms made by this partition the ground floor of the building is all one room. Within the "L" shaped room which is ten feet in width were found a 1500-egg incubator and some mash for feeding chickens. The partition wall has two doors for entrance to the larger room. Within the larger room were found thirty-eight barrels of mash and twenty-eight gallons of "corn whiskey" commonly called "hootch" or "moonshine," and a still in operation. The State's testimony shows that the gas was turned off by the officers making the search, and when the still had cooled off sufficiently three and one-half gallons of the "corn whiskey" were drawn therefrom. The mash was destroyed and the still taken away by the raiding officers.

As stated above the verdict of guilty was based upon the second count of the indictment charging unlawful and felonious manufacturing, making, brewing and distilling of the liquor and mash specified. This count therefore is the only one for our consideration on this appeal.

Defendant's plea was "not guilty" and the defense was that defendant was not the owner or operator of the still; that it was there and being operated without the knowledge or consent of defendant and that he was not guilty of the charge contained in count 2 of the indictment. Defendant testified that he owned the building and had leased the room in which the still, mash and whiskey were found, to an Italian, one Frank Latonia, for a period of six months, beginning in June, 1923, at $25 per month, all paid in advance, for use as a storeroom for making kraut and pickles.

The motion for new trial states that the trial court erred in allowing the jury, after being impanelled, to separate without the consent of defendant, at the adjournment taken on November 14, 1923, until the convening of court the following day. The record shows the jury was allowed to separate with the consent of the State and the defendant. But whether the jury was, or was not, allowed to separate without the consent of defendant would work no reversal herein. Section 4026, Revised Statutes 1919, is controlling on this point. That part of the section which is pertinent to this question is as follows: "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases; and in misdemeanors the court may permit such separation of the jury on its own motion . . ." Defendant's contention on this point, therefore, is without merit.

Point 2 of the motion for new trial charges that the court erred in permitting the cause to go to trial and in submitting the law and issues to the jury without the jury being sworn to try the cause, as provided by law. Recourse to the record determines this point against defendant's contention. The record recites, after naming the jurors, . . . twelve good and lawful men of the body of the county of Jackson who were duly impanelled and sworn to well and truly try the issue herein and a true verdict render according to the law and the evidence."

This entry is in statutory form and in the absence of any brief or argument wherein error in same is pointed out, we accept the record as correct.

The next point charges the court erred in overruling defendant's demurrer to the evidence at the close of the State's case. It is the rule that in the consideration of a demurrer in cases of this character, that the State's testimony shall be taken as true, and the point urged directly raises the question of whether or not the State made out a prima-facie case to go to the jury. In our review of the testimony it seems clear that the evidence presented by the State is sufficient to make out a prima-facie case and the question of the guilt or innocence of the defendant was for the jury. We rule against defendant on this point.

The remaining points urged in support of the motion for new trial may be considered together. They embrace the charges (1) of error in the refusal of the court to instruct the jury, at the close of all the evidence, to find the defendant not guilty; (2) that the verdict was contrary to the law and the evidence, against the weight of the evidence and the law under the evidence. In the consideration of these phases of the appeal, we need not state again what the evidence is, having already done so. We fail to find reversible error of record. The judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.